IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERT G HILL III, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-02528 |
| | § | |
| MARGARET KELIHER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER TRANSFERRING CASE

Pending before the Court is Defendants' Motion to Transfer Venue, [Doc. No. 5 ("Defendants' Motion to Transfer Venue to the Northern District of Texas (Dallas Division)")], [hereinafter "Defendants' Motion"].[1] After considering the motion, response, and relevant law, The Court herein grants Defendants' Motion to Transfer the above-referenced action to the Northern District of Texas, Dallas Division.

## I. BACKGROUND

This case is one of a long line of cases involving different permutations of the same parties. Most, if not all, of the prior cases were filed in Dallas County (state courts and the Northern District of Texas) because that is where all the underlying events took place. Plaintiff Hill III (hereinafter "Hill III" or "Plaintiff"), a descendant of famed oilman H.L. Hunt, became embroiled in a string of lawsuits related to Hunt's estate and other somewhat related disputes with other family members. This litigation history involves at least fifteen state court cases, all of which were

---

[1] A complete list of all pending motions in this case is as follows: Defendants' Motion to Dismiss for Failure to State a Claim [Doc. No. 3], Plaintiff's Motion to Remand [Doc. No. 4], Defendants' Motion to Transfer Case to Northern District of Texas (Dallas Division) [Doc. No. 5], Defendants' Motion to Dismiss for Failure to State a Claim [Doc. No. 7], Defendants' Motion to Dismiss Pursuant to the Texas Citizens Participation Act, and Brief in Support, [Doc. No. 8], Defendants' Motion to Dismiss Pursuant to the Texas Citizens Participation Act, and Brief in Support, [Doc. No. 10], and PBL Multistrategy Fund, L.P's Application for Turnover Order and Temporary Restraining Order [Doc. No. 18].

1

brought and heard in Dallas, Texas.[2] This case is also related, at least in terms of the involved parties, to Civil Action No. 3:07-cv-02020, *Hill v. Schilling et al.*, Northern District of Texas (Dallas Division), and Civil Action No. 3:17-cv-494, *Hill v. Watkins et al.*, Northern District of Texas (Dallas Division).

In *Hill v. Schilling et al.*, Civil Action No. 3:07-cv-02020 (the "02020 Action"), the parties reached a settlement agreement, the General Settlement Agreement ("GSA"), which was entered by the Court as the final judgment to resolve the disputes related to the estate with finality. In the GSA, the Court (the Northern District of Dallas) expressly retained continuing and exclusive

---

[2] The following is the list of lawsuits that Hill III has filed in Dallas County with regard to this family litigation:
(1) Civil Action No. 07-CV-02020, Albert G. Hill, III v. Tom Hunt, William Schilling, Ivan Irwin, Jr., Albert G. Hill, Jr., Alinda H. Wikert, Lyda Hill, Heather V. Washburne, Elisa M. Summers, and Margaret Hunt Trust Estate and Haroldson L. Hunt, Jr. Trust Estate, United States District Court for the Northern District of Texas (Dallas Division)
(2) Cause No. DC-07-13192, Albert G. Hill, III v. Tom Hunt, William Schilling, Ivan Irwin, Jr., Albert G. Hill, Jr., Alinda H. Wikert, Lyda Hill, Heather V. Washburne, Elisa M. Summers, and Margaret Hunt Trust Estate and Haroldson L. Hunt, Jr. Trust Estate, 116th District Court, Dallas County, Texas, 14th District Court, Dallas County, Texas;
(3) Cause No. DC-08-01862, Albert G. Hill, III v. Tom Hunt, William Schilling, Ivan Irwin, Jr., Albert G. Hill, Jr., Alinda H. Wikert, Lyda Hill, Heather V. Washburne, Elisa M. Summers, and Margaret Hunt Trust Estate and Haroldson L. Hunt, Jr. Trust Estate, 116th District Court, Dallas County, Texas;
(4) Cause No. DC-08-02187, Albert G. Hill, III v. Lyda Hill, 160th District Court, Dallas County, Texas;
(5) Cause No. DC-08-02578-C, Albert G. Hill, III v. Albert G. Hill, Jr., 68th District Court, Dallas County, Texas;
(6) Cause No. DC-08-02907-M, Albert G. Hill, III v. Chester John Donnally, Jr., 298th District Court, Dallas County, Texas;
(7) Cause No. PR-09-00506-3, Albert G. Hill, III v. Albert G. Hill, Jr., Probate Court No. 3, Dallas County, Texas;
(8) Cause No. PR-09-1165-3, Albert G. Hill, III v. Albert G. Hill, Jr., Probate Court No. 3, Dallas County, Texas;
(9) Cause No. DC-08-02910-F, Albert G. Hill, III v. Albert G. Hill, Jr., 116th District Court, Dallas County, Texas;
(10) Cause No. DC-08-02915, Albert G. Hill, III v. Albert G. Hill, Jr., 162nd District Court, Dallas County, Texas;
(11) Cause No. PR-08-02253-2, Albert G. Hill, III v. Joyce Waller, Individually, and as Trustee of the Al G. Hill, III 2006 Trust, Probate Court No. 2, Dallas County, Texas;
(12) Cause No. DC-08-02911-E, Albert G. Hill, III v. Joyce Waller, 101st District Court, Dallas County, Texas;
(13) Civil Action No. 3:17-CV-494, Albert G. Hill, III v. Craig Watkins, Albert G. Hill, Jr., Lyda Hill, Alinda Wikert, Lisa Blue Baron, Charla Aldous, Stephen Malouf, Michael Lynn, Jeffrey Tillotson, Donna Strittmatter, Stephanie Martin, Terri Moore, Hoyt Hoffman, Mo Brown, Randall Thompson, Edith Santos, David Pickett, Albert Hill Trust, Ty Miller, and Branch Banking & Trust Company, in the United States District Court for the Northern District of Texas (Dallas Division);
(14) Cause No. PR-18-02199-2, Albert G. Hill, III, et al. v. Tyree B. Miller, Margaret Keliher, Chester J. "Don" Donnally, Jr., Ivan Irwin, Jr., Deceased, Thomas P. Tatham, David Picket, Joyce Waller, Joe O'Brien, Heather Hill Washburn, Hill Washburne, Elisa Hill Summers, Camille Summers, and Stephen Summers, and Al G. Hill, Jr., Family Foundation, Probate Court No. 2 of Dallas County, Texas;
(15) Cause No. PR-18-02074-2, Albert G. Hill, III, et al. v. Tyree B. Miller, Margaret Keliher, Chester J. "Don" Donnally, Jr., Ivan Irwin, Jr., Thomas P. Tatham, Heather Hill Washburn, Hill Washburne, Elisa Hill Summers, Camille Summers, and Stephen Summers, Probate Court No. 2 of Dallas County, Texas.

jurisdiction over its Final Judgment, the GSA, and the parties. (02020 Action ECF No. 999 ¶ 45). The GSA contained various provisions releasing the Defendants from future lawsuits related to the same underlying actions at issue in that case amongst other agreed clauses in the GSA.

On June 5, 2019, Hill III brought this suit against fifteen individuals, asserting claims for malicious prosecution; conspiracy related to malicious prosecution; and aiding, abetting, and providing substantial assistance relating to malicious prosecution. These claims arise out of two different lawsuits against Hill III, one civil and the other criminal. The first lawsuit, the civil dispute, was brought against Hill III in the Northern District of Texas by attorneys who had briefly represented him in a prior lawsuit to collect unpaid attorney's fees. Because of the pendency of the second criminal case, Hill III's attorneys advised him not to testify and the court entered judgment against Hill III and his wife for $21.9 million. [Doc. No. 1, Ex. Plaintiff's Original Petition ¶ 51]. Beyond that, the record is not clear whether that judgment has been appealed. The second lawsuit was a criminal charge for claims of felony mortgage fraud, which was brought in state court in Dallas, Texas. When the criminal court dismissed the charges against Hill III, Texas appealed to the Dallas Court of Appeals. Hill III contends that the affirmance of the dismissal of those charges demonstrated that the prosecution was "based upon the taint of prosecutorial misconduct and the undue influence exercised over Dallas District Attorney Craig Watkins by Lisa Blue, Hill Jr., and those working in concert with them." [Doc. No. 21 at 5]. Hill III insists that the instant suit is related to those cases and the alleged malicious misconduct only. The Defendants contend that this lawsuit is just another attempt to collaterally attack the GSA. [Doc. No. 5 at 7].

Hill III filed the instant case in the 127th District Court of Harris County, Texas. Defendants removed it to federal court based on federal question jurisdiction. Defendants argue that Hill III is actually bringing legal challenges to the 2010 settlement, the GSA, and the Final

Judgment of the Northern District of Dallas. They argue that his Original Petition makes clear that the actions leading up to the alleged malicious prosecution are related to the family's prior lawsuits, the actions of attorneys related to those prior lawsuits, and are intended to unseat the GSA and Final Judgment.[3]

On July 19, 2019, Defendants filed a Motion to Transfer Venue to the Northern District of Texas, Dallas Division, pursuant both to 28 U.S.C. § 1404(a) and to a forum-selection clause they contend is in the GSA and Final Judgment governing this dispute. [Doc. No. 5]. Plaintiff filed a timely response opposing any transfer of venue in compliance with the scheduling order entered by the Court. [Doc. No. 21]. In his response, Hill III argues that the motion should be denied for four reasons: (1) that this Court does not have jurisdiction in the first instance; (2) that no valid forum selection clause covers his claims and the parties in this case; (3) that even if a forum selection clause is found to apply, that is should be disregarded on other grounds; and (4) that his choice of forum is entitled to substantial deference and the other private and public interest factors do not weigh it. [Doc. No. 21 at 1–2].

## II. LAW AND ANALYSIS

*A. The Order of Deciding Questions Unrelated to the Merits*

The Supreme Court has explained that "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–102 (1998)). When multiple challenges are present before the Court, there is no

---

[3] In particular, the Defendants point to the allegations that Hill's family members conspired against him by coordinating these criminal charges with the government in order to gain advantage over Hill III in the ongoing dispute over attorney's fees and other ongoing civil litigations. [Doc. No. 1, Ex. Plaintiff's Original Petition ¶ 59].

4

mandatory sequence for resolving non-merits based issues. *Id.* at 435–36 (holding in the *forum non conveniens* context that "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

This Court presently has two non-merits motions pending before it: Plaintiff's Motion to Remand [Doc. No. 4] and the instant motion, Defendants' Motion to Transfer [Doc. No. 5]. Hill III has urged this Court to rule first on the Motion to Remand. [Doc. No. 21 at 2 n.1]. Although the Fifth Circuit has not expressly ruled on the issue, courts within the Fifth Circuit have held that, in accordance with *Sinochem*, a court may exercise its discretion in determining the order in which to address decisions not affecting the merits. *Hardwick v. Factor*, N. H-10-5249, 2011 WL 1831706, at *2 (S.D. Tex. May 9, 2011) (Rosenthal, J.) ("A court may decide a motion to transfer to another district before ruling on other options, and deciding the motion to transfer first is 'particularly appropriate where a related suit is already pending in the transferee district.'") (quoting *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, No. 3-08-CV-1547-O, 2008 WL 5119599, at *2 (N.D. Tex. Dec. 3, 2008)); *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011) (Rosenthal, J.) ("But while the absence of subject matter jurisdiction prevents a court from reaching a case's merits, a court may transfer a case without first determining whether it has subject matter jurisdiction over the case.") (citing *In re LimitNone, LLC*, 551 F.3d 572, 277–78 (7th Cir. 2008)); *see also Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enters., Inc.*, No. SA-18-CV-820-XR, 2018 WL 6050603, at *8 (W.D. Tex. Nov. 19, 2018) (Rodriguez, J.) ("[T]he Court may decide to proceed with determining venue before resolving the jurisdictional issue.").

Accordingly, the Court finds it appropriate to first decide the issue of venue before the question of federal jurisdiction.

*B. Section 1404(a) Factors*

The general venue statute, 28 U.S.C. § 1391 controls a plaintiff's choice of venue. Under that section, a diversity action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is location; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." 28 U.S.C. § 1391(b)(1)–(2). As the Fifth Circuit has explained, Congress tempered the effects of this general venue statute by enacting the venue transfer statute, 28 U.S.C. § 1404, the statute under which Defendants seek to transfer venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (hereinafter "*In re Volkswagen II*"). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Id.* (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

> 28 U.S.C. § 1404(a) provides as follows:
>
> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). "In order to obtain a new federal [venue], the statute requires only that the transfer be '[f]or the convenience of the parties, in the interest of justice.'" *In re Volkswagen II*, 545 F.3d at 314 (quoting *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983)). The movant must show "good cause" to transfer, which the Fifth Circuit has explained in the context of § 1404(a) means that

> a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's

6

choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.

*Id.* at 315. To guide trial courts in this inquiry, the Supreme Court has established a list of both private interest factors and public interest factors affecting the convenience of the litigants and of the forum:

> The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843. The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 509, 67 S. Ct. at 843.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242 n.6 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). Accordingly, the Court weighs these factors as they apply to this case.

Before turning to the individual factors, the Court notes the following: All the actions in the underlying dispute took place in Dallas. All Defendants mentioned in the Petition except one are in Dallas.[4] Defendants defenses' and federal jurisdiction claims are based on federal and state court rulings in Dallas. Dallas state court injunctions also exist governing portions of this wide web of legal disputes, whether relevant to this litigation or not.

---

[4] According to Hill III's Original Petition, the following Defendants are located in Dallas: Craig Watkins, Terri Moore, Russell Wilson, Margaret Keliher, Heather Hill Washburne, Ray Washburne, Elisa Hill Summers, Alinda Wikert, Lyda Hill, David Pickett, Ty Miller, Joy Waller, PBL Multi-Strategy Fund, L.P., and Chester Donnally. [Doc. No. 1, Ex. Plaintiff's Original Petition at 5]. The only Defendant who lives elsewhere is Thomas Tatham ("Tatham") who has an office in Houston, Texas. *Id.* There are no specific allegations made involving Tatham.

### i. Private Interests Factors

Defendants argue that transfer is warranted because the alleged wrongful conduct occurred in Dallas, the people involved in that alleged wrongful conduct are located in Dallas (as this dispute involved the Dallas County District Attorney's office and Hill's family, all of whom are in Dallas), all of the witnesses except for Hill III (the plaintiff, who now lives in Atlanta, Georgia) are in Dallas, and all of the Defendants except for one are located in Dallas. The Defendant who lives outside of Dallas, Tatham, is located in Houston, Texas. However, the Defendants point out that Hill III raises no specific allegations in the Complaint against Tatham, unlike the other Defendants against whom he does raise specific factual allegations.[5]

In response, Hill III argues transferring the case would violate the dictates of fundamental fairness. In particular, Hill III raises a concern that if the motion to transfer is granted first, and the Northern District then grants the motion to remand, he "has serious concerns regarding obtaining a fair trial in Dallas County state courts, where Al III's malicious prosecution took place . . . . After all, many of Al III's adversaries have extensive political, social, and economic connections in the venue that have already resulted in one miscarriage of justice in that city." [Doc. No. 21 at 17]. The Court will address this argument after discussing each of the private and public interest factors, as this is an overarching argument that Hill urges should be weighed against the convenience of

---

[5] It is not entirely clear from Hill III's Original Petition what role Tatham is alleged to have played, if any. The Original Petition contends that Al Hill Jr., Hill III's father, had advisors and attorneys who had substantial financial interests in minimizing Hill III's portion of the estate. [Doc. No. 1, Ex. Plaintiff's Original Petition ¶ 26]. He alleges no specific cause of action against Tatham by name. The only paragraph in the Original Petition that refers to Tatham proceeds as follows:
> Al Hill Jr.'s advisors, attorneys, and certain family members – including his aunts, his sisters, and his brother-in-law – also had substantial financial interests in minimizing Mr. Hill's portion of the estate and trusts and in currying favor with Al Hill Jr. During the entire relevant period, Ms. Keliher was an advisor and confidant of Al Hill Jr. and received a substantial monthly retainer from the family office, A.G. Hill partners ("AGH"). During the entire relevant period, Ty Miller was President and Chief Financial Officer of AGH; in 2010, Miller launched AGH's investment into real estate and personally has invested substantially in AGH's real estate investments. **Defendants Tatham and Donnelly occupied similar positions in the orbit of Al Hill Jr.**

[*Id.*] (emphasis added). That is the only time the Original Petition mentions Tatham.

transfer. He also argues that travel to Houston is not an inconvenience unlike traveling to another state might be, and that during the course of discovery, he expects to be the party bearing the costs of as the one seeking discovery.[6] The Court now turns to the private interest factors at work in this matter.

*1. The relative ease of access to sources of proof*

Plaintiff does not contradict Defendants' assertion that all Defendants except Tatham are located in Dallas, and that the Parties' documents, exhibits, witnesses, and attorneys are located in Dallas, except for Hill III, who is in Atlanta, and his attorney, who is in Houston. He simply points to the fact that Defendants did not list specific witness names. As the Court has already stated, everything related to this case—the underlying actions, the witnesses, the parties, and the courts at issue—are in Dallas. This factor weighs in favor of transfer.

*2. The availability of compulsory process to secure the attendance of witnesses*

As in the Fifth Circuit's opinions in *In re Volkswagen I* and *In re Volkswagen II*, the non-party witnesses (and the vast majority of the party witnesses) are located outside of the district in which this lawsuit was brought and are outside of the Southern District's subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii). *In re Volkswagen II*, 545 F.3d at 316. Moreover, any "trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)." *In re Volkswagen AG*, 371 F.3d 201, 205 n.4 (5th Cir. 2004) (hereinafter, "*In re Volkswagen I*"). Houston is located over 200 miles from the venue in which nearly every witness resides. Because the venue transfer analysis is concerned with convenience, and the transferee venue would be more convenient for almost every Party and

---

[6] While Hill III makes the argument that as the plaintiff he will bear the costs of seeking discovery, his statements seem to assume that his opponents will not incur discovery costs and his pleadings do not include an offer to pay for the opposing parties' discovery costs.

witness, and the transferee venue would hold subpoena power over witnesses for both depositions and trial, this factor weighs in favor of transfer.

### 3. The cost of attendance for willing witnesses

The Fifth Circuit also explained in *In re Volkswagen I* that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." 371 F.3d at 204–05. The Fifth Circuit later said "that it is an 'obvious conclusion' that it is more convenient for witnesses to testify at home and that '[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *In re Volkwagen II*, 545 F.3d at 317 (quoting *In re Volkwagen I*, 371 F.3d at 205). Although the Court does not have before it a list of all witnesses who would participate in this matter, it is clear from the history of all prior related litigations that Dallas is a venue with which all prior and related witnesses would be accustomed to through the history of this dispute. Despite Hill III's contention that travel to Houston is not an inconvenience compared to leaving Texas, the Fifth Circuit's rules make clear that it is simply more convenient for witnesses to testify at home and that this venue is more than 100 miles away from Dallas. Accordingly, this factor also weighs in favor of transfer.

### 4. All other practical problems

The Court sees no other practical problems that might arise by transferring this case to the Northern District of Texas (Dallas Division), nor does Hill III raise any. Indeed, he states that "the practical considerations of proceeding through trial are essentially the same in this Court as in the N.D. Court." [Doc. No. 21 at 19]. This factor also weighs in favor of transfer.

### ii. Public Interest Factors

Defendants also argue that the relevant public interest factors weigh in favor of transfer. They note that the Northern District of Dallas issued the GSA and Final Judgment that they allege is at issue in this case and that district is therefore familiar with all the underlying litigation. Even if one hypothetically assumes that the GSA and Final Judgment do not exist and based this decision solely upon Plaintiffs' allegations taken at face value, all of the alleged wrongful acts took place in Dallas. Defendants also argue that transferring the case would ensure that two separate federal districts are not simultaneously litigating the same issues between the same parties in. Finally, they argue that the Northern District has a strong local interest in hearing this case because of the factual nexus between the claims in the case and the court in Dallas.

In response, Hill III points out that the Southern District of Texas has a lighter caseload than the Northern District of Texas as of March 31, 2018. [Doc. No. 21 at 19]. He argues that his lawsuit does not present any local issues at all, and that courts in all parts of Texas have an interest in preventing malicious prosecutions like that at issue here.

The Court now turns to the individual factors, which again weigh in favor of transfer to the Dallas Division of the Northern District of Texas.

#### 1. *The administrative difficulties flowing from court congestion*

As previously noted, all of Hill III's prior litigation, including those giving rise to this lawsuit, took place in Dallas. Whether or not this lawsuit is actually an attempt to undermine the GSA from the 02020 lawsuit would be more easily resolved by the courts with prior knowledge of that order. Further, transferring the case would reduce the risk of having parallel litigation with opposing results issue from different judicial districts. Whether or not this district has more

11

pending cases on its docket is not enough to outweigh the other relevant considerations. This factor weighs in favor of transfer.

### 2. The local interest in having localized interests decided at home

Under this second factor, a court should look to the relevant factual ties between this district, the potential transferee district, and the lawsuit. Hill III has not stated any allegation or fact that connects his lawsuit to Houston except for the fact that one defendant has an office there. In contrast, every other defendant, non-party witness discernable from the pleadings, underlying action, and underlying litigation is in Dallas. Furthermore, if Hill III's allegations about the malicious prosecution are true, which the Court assumes at this procedural juncture, then Dallas courts have a much stronger interest in preventing their courts from engaging in such actions.

### 3. The familiarity of the forum with the law governing the case

This factor is neutral, as both the Southern District and Northern District of Texas are familiar with Texas law and Texas common law.

### 4. The avoidance of unnecessary problems of conflict of laws

This factor is also neutral, as neither party nor the Court anticipate problems related to conflicts of law or the application of foreign law.

Overall, the public interest factors weigh toward a transfer.

### iii. Hill III's Concerns About the Prospect of Remand

As demonstrated above, each private and public interest factor (except for the two neutral factors) weigh heavily in favor of transfer, for the convenience of every involved party and witness. The Court does acknowledge, however, that Hill III raises an issue, which if true, might cause one in Hill III's position to worry. Section 1404(a) requires the Court to consider how convenience weighs against the interests of justice. Hill III has voiced his concern that if his case is transferred

to the Northern District of Texas, should it be remanded, it will be remanded to the very state courts (Dallas County state courts) about which he now files these legal complaints. He worries that he will not receive a fair trial from courts in front of whom he was allegedly maliciously prosecuted.

While this could be an understandable concern, the Court finds it to be procedurally unfounded. The Fifth Circuit has explained that a district court can only remand matters back to the state court *from which it came*. *Taliaferro v. Goodyear Tire & Rubber Co.*, 265 F. App'x 240, 244 (5th Cir. 2008) ("We conclude that it was improper for the federal district court to transfer pending state law claims to the Smith County court, when they were originally filed in and removed from the Rusk County court. *A district court in this situation has authority to remand a case to the State court from which it was removed.*") (internal citations omitted) (emphasis added); *see also* 28 U.S.C. § 1447(d); *Bloom v. Barry*, 755 F.2d 356, 358 (3d Cir. 1985) ("'Remand' means 'send back.' It does not mean 'send elsewhere.'"); *Petrofsky v. ARA Group, Inc.*, 878 F. Supp. 85, 86 (S.D. Tex. 1995) ("A case cannot be remanded to a court from which it did not come, regardless of how just or expedient that result might be."). Thus, if one of this Court's colleagues in the Northern District of Texas finds remand to be appropriate, the remand must be to the court from which it was removed, which is the 127th Judicial District Court located in Harris County, not Dallas County. Obviously, that court would then be free to consider the propriety of the venue, just as it could have had this case never been removed.

Accordingly, after viewing all of the relevant statutory factors, the Court finds that it should transfer the case under 28 U.S.C. § 1404(a) as Defendants have shown that the transferee venue is clearly more convenient and not against the interests of justice in this matter. *In re Volkswagen II*, 545 F.3d at 314.

*C. Forum Selection Clause*

Defendants also seek to transfer venue based on the forum selection clause raised in the underlying GSA. Hill III, of course, strongly disputes this. Defendants urge the Court to decide transfer based on this clause rather than relying on 28 U.S.C. § 1404(a), which they have only argued as an alternative to their primary motion under the forum selection clause. Plaintiff responds that the instant lawsuit, which relates to an alleged malicious prosecution, "does not seek to enforce, does not seek to implement, and does not arise from the Settlement Agreement or Final Judgment, making those documents' forum selection clause inapposite." [Doc. No. 21 at 2].

The Court finds that the alternative basis for transfer under 28 U.S.C. § 1404(a) is an independently sufficient grounds for transfer and therefore does not need to engage in the forum selection clause analysis under *Atlantic Marine Construction Co. v. United States District Court*, 571 U.S. 49 (2013):

> Usually, a court applying that doctrine must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir. 2007). The presence of a valid forum-selection clause simplifies this analysis in two ways. "First, the plaintiff's choice of forum merits no weight" because, by contracting for a specific forum, "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Atl. Marine*, 134 S.Ct. at 581–82. Second, the private-interest factors "weigh entirely in favor of the preselected forum," so that the "district court may consider arguments about public-interest factors only." *Id.* at 582.

*Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016). The Parties strongly dispute whether the GSA contains a forum selection clause which controls. Since both the private and public interest factors weigh heavily in favor of transfer, in the interest of judicial economy the Court does not find it necessary to determine at this point in the litigation whether Hill III's

14

allegations implicate the GSA or whether the GSA's forum selection clause is valid and applicable here.

All other pending motions will be decided, if appropriate, by the transferee court.

## III. CONCLUSION

While this Court's decision to transfer this matter to the Northern District of Texas is based solely upon Section 1404(a), its decision is additionally buoyed by the fact that the federal court in Dallas is best situated to determine whether the instant case violates its own injunction. Furthermore, there is seemingly no factual connection to the Southern District of Texas except the presence of one defendant against whom no individual allegations have been made.

For the aforementioned reasons, this Court **GRANTS** Defendants' Motion to Transfer Venue to the Northern District of Texas, Dallas Division [Doc. No. 5]. It is therefore **ORDERED** that this civil action is hereby transferred to the Northern District of Texas (Dallas Division). All pending motions will be considered by the transferee court.

SIGNED at Houston, Texas, this 14th day of August, 2019.

_____
ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE