IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALBERT G. HILL, III,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-1948-L** |
| | § | |
| **CRAIG WATKINS; TERRI MOORE;** | § | |
| **RUSSELL WILSON; MARGARET** | § | |
| **KELIHER; HEATHER HILL** | § | |
| **WASHBURNE; ELISA HILL SUMMERS;** | § | |
| **RAY WASHBURNE; ALINDA WIKERT;** | § | |
| **LYDA HILL; DAVID PICKETT;** | § | |
| **TY MILLER; JOY WALLER;** | § | |
| **PBL MULTI-STRATEGY FUND, L.P.;** | § | |
| **THOMAS TATHAM; and** | § | |
| **CHESTER DONNALLY,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion to Remand to State Court and for Costs and Fees (Doc. 4), filed July 19, 2019; and Defendants' Unopposed Motion to Exceed Page Limitation (Doc. 33), filed August 23, 2019.  After considering the motions, briefs, record, and applicable law, the court **grants** Defendants' Unopposed Motion to Exceed Page Limitation (Doc. 33) and **directs** the clerk of the court to file as a separate document Defendants' Response to Plaintiff's Motion to Remand (Doc. 33-1), which is attached as an exhibit to Defendants' Unopposed Motion to Exceed Page Limitation; **grants** Plaintiff's Motion to Remand to State Court (Doc. 4); **denies** Plaintiff's request

**Memorandum Opinion and Order – Page 1**

to recover attorney's fees and costs (Doc. 4); and **remands** this action to the 127th Judicial District Court, Harris County, Texas, from which it was removed.[1]

## I.    Factual and Procedural Background

Plaintiff Albert G. Hill, III ("Plaintiff" or "Hill III") originally brought this action on June 5, 2019, in the 127th Judicial District Court, Harris County, Texas ("Houston Action"), against Defendants Margaret Keliher, Heather Hill Washburne, Elisa Hill Summers, Ray Washburne, Alinda Wikert, Lyda Hill, David Pickett, Ty Miller, Joy Waller, Thomas Tatham, and Chester Donnally (the "Removing Defendants"), Craig Watkins, Terri Moore, Russell Wilson, and PBL Multi-Strategy Fund, L.P. (collectively, "Defendants"). Plaintiff asserts Texas common law tort claims for malicious prosecution, conspiracy, and aiding and abetting, and seeks to recover actual and exemplary damages for the alleged malicious prosecution of him in connection with an April 4, 2011 criminal indictment for felony mortgage fraud.

On June 7, 2019, the Removing Defendants filed a motion for leave in Civil Action No. 3:07-CV-2020-L ("2020 Action"),[2] requesting that the court enjoin Plaintiff and order him to dismiss the Houston Action on the grounds that he is a vexatious litigant, and the claims asserted in Houston Action were released as part of the 2010 settlement in the 2020 Action as set forth in the Global Settlement and Mutual Release Agreement ("GSA").

---

[1] Also pending before the court is the Agreed Motion for Entry of Order on Turnover Application filed by Defendant PBL Multi-Strategy Fund, L.P. and Plaintiff. As the court has determined that it lacks subject matter jurisdiction to entertain this action and must remand the case, it leaves resolution of this agreed motion to the state court from which the action was originally removed, as well as the other motions that were filed before the transfer of this action that are not addressed in this opinion.

[2] Plaintiff later refers to this same action as the "02020 Lawsuit." The court will use the appellation "2020 Action."

**Memorandum Opinion and Order – Page 2**

On July 12, 2019, the Removing Defendants filed a Notice of Removal in the Houston Action, to which all Defendants consented, based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, and 1441(a), and other "extraordinary circumstances." Defs.' Notice of Removal 2. As a result, the Houston Action was removed to the United States District Court for the Southern District of Texas, Houston Division, and assigned Civil Action No. 4:19-CV-2528. In their Notice of Removal, Defendants contend that Plaintiff raised many of the same claims against many of the same Defendants in prior Civil Action No. 3:17-CV-494-L ("494 Action"), which was filed February 21, 2017, and voluntarily dismissed several months later. Defendants further contend that the Houston Action is an impermissible attempt by Plaintiff to:

> collaterally attack[] the 2010 settlement, the GSA, and the Final Judgment [in the 2020 Action]. That is, in the Houston Lawsuit, Hill III is attacking, and seeking to unravel and set aside the provisions of the settlement, the GSA, and the Final Judgment, namely the releases and covenants not to sue to which he agreed in 2010.
>
> In the Houston Lawsuit, despite the releases and covenants not to sue he gave in the settlement which are incorporated in the Federal Court's November 2010 Final Judgment, Hill III is asserting claims for malicious prosecution, conspiracy, and aiding, abetting, and substantial assistance arising out of actions that took place before the Federal Court issued its November 2010 Final Judgment (which incorporated the GSA settling various lawsuits), and he is further alleging these actions were purportedly undertaken "[t]o retaliate against [Hill III] and to gain an advantage in those civil cases" which he settled with the 2010 settlement, GSA, and Final Judgment.

Defs.' Notice of Removal 3 (footnotes omitted). For this reason, Defendants assert in their Notice of Removal that "Hill III's claims in the Houston Lawsuit satisfy the requirements of *Baccus v. Parrish*, 45 F.3d 958, 960 (5th Cir. 1995)," and removal of the action is appropriate because, like *Baccus*, Plaintiff's claims in the Houston Action are an improper collateral attack and attempt to set aside, and unravel a federal settlement agreement, that is, "the 2010 settlement, GSA, and Final

Judgment" in the 2020 Action.  Defs.' Notice of Removal 4 (footnote omitted).  In addition, Defendants maintain that other "extraordinary circumstances" support removal, given Hill III's prior "repeated[] and relentless[] attempt[s] to attack, set aside, unravel, circumvent, and breach the GSA and the Final Judgment" in the 2020 Action, and Hill III's conduct as vexatious litigant.  For support, Defendants cite to determinations by the undersigned that certain postjudgment filings by Hill III in the 2020 Action were frivolous.  Defendants also cite to the undersigned's: (1) December 10, 2018 opinion in the 2020 Action, finding Hill III in civil contempt for violating the court's July 10, 2017 order that enjoined him from removing First Tennessee Bank NA as the trustee of several irrevocable trusts established for the grandchildren of Albert G. Hill, Jr.; and (2) December 7, 2018 opinion, "granting a Motion to Enforce the Final Judgment and GSA relating to Hill III's will contest (the "Will Contest Order") [and] again finding Hill III to be a vexatious litigant: 'The court also concludes that an injunction is required to deter and prevent future litigation of previously decided issues by a vexatious litigant.'" Defs.' Notice of Removal 5 (footnotes omitted).

After removal of the case, Defendants moved to transfer the action to the Northern District of Texas, where the 2020 Action and the undersigned are located.  Plaintiff also moved to remand the action to state court.  On August 14, 2019, without deciding the motion to remand or considering the parties' contentions as to whether the GSA and Final Judgment in the 2020 Action govern the dispute in this case and whether Plaintiff filed the Houston Action in an attempt to undermine the GSA and Final Judgment in the 2020 Action, United States District Judge Andrew S. Hanen granted Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a).

**Memorandum Opinion and Order – Page 4**

## II.    Plaintiff's Motion to Remand

### A.    Plaintiff's Arguments in Support of Remand

In his Motion to Remand, Plaintiff asserts, as a preliminary matter, that Defendants did not and could not have removed this action based on diversity jurisdiction because they are all citizens of Texas, and 28 U.S.C. § 1441(b)(2) precludes removal by in-state defendants under section 28 U.S.C. § 1332(a): "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Pl.'s Mot. 2 & n.1.[3]

Plaintiff also contends that Defendants have failed to meet their burden of establishing the existence of subject matter jurisdiction based on federal question jurisdiction, the sole basis for Defendants' removal.  Plaintiff contends that removal based on *Baccus* is not appropriate and that Defendants' "reliance on *Baccus* is misplaced because that case's statements regarding a party's ability to remove a case is no longer good law and, even if it is still binding precedent, is distinguishable" for the following reasons:

> In *Baccus*, a federal class action was settled under which, among other things, Texas was to close certain schools. 45 F.3d 958, 959 (5th Cir. 1995). Later, plaintiffs sued a task force created pursuant to the class action settlement agreement in an effort to prevent schools from closing, the case was removed to federal court, and remand was denied. *Id.* at 959-60. Under these facts, the Fifth Circuit held that removal was appropriate because "it is clear that the thrust of [the plaintiffs'] claim is an attack on the settlement agreement. . . ." *Id.* at 961.
>
> First, it is difficult—if not impossible—to square the Fifth Circuit's holding in *Baccus* with the Supreme Court's subsequent holding in other cases that federal

---

[3] This argument is based not on a jurisdictional bar but, instead, on a procedural bar. "[T]he presence of an in-state defendant is procedural defect that is waived unless raised within thirty days of removal." *Denman by Denman v. Snapper Div.*, 131 F.3d 546, 548 (5th Cir. 1998) (citing 28 U.S.C. § 1447(c)) (other citations omitted). In other words, Congress has decided, even though jurisdiction exists under 28 U.S.C. § 1332(a), cases that involve an in-state defendant may not be removed.

jurisdiction does not exist based "on a defendant's assertion that a prior federal judgment has disposed of the entire matter and thus bars plaintiffs from later pursuing a state-law-based case." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 472 (1998); *see also Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002) (disapproving of argument that failed "to explain how the Alabama District Court's retention of jurisdiction over the Price settlement authorized removal of the Henson action. Removal is governed by statute, and invocation of ancillary jurisdiction, like invocation of the All Writs Act, does not dispense with the need for compliance with statutory requirements.").

Second, in light of these Supreme Court decisions, the Fifth Circuit has itself cast doubt on the viability of the *Baccus*'s formulation of when a case may be removed to federal court. *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391-92 (5th Cir. 2009) ("[T]his court's holding in *Baccus*, that federal jurisdiction is proper when a state-court action seeks to undermine an order of the federal court, has been cast into doubt by subsequent decisions."); *Texas v. Real Parties In Interest*, 259 F.3d 387, 393, n.10 (5th Cir. 2001) (explaining that "our decision in *Baccus* retains little precedential value. . . .").

Third, even if this Court concludes *Baccus* is binding precedent, this case is clearly distinguishable. In *Baccus*, a federal court approved a class action settlement that called for the closure of certain state schools after which the Texas legislature created a task force to recommend schools to close. 45 F.3d at 959-60. The state court plaintiffs sought injunctive and declaratory relief against the task force that was created contingent on the federal settlement being approved by the district court and sought to prevent the task force from meeting. *Id.* They even "concede[d] that their suit, if successful, would have affected the Lelsz settlement agreement." *Id.* at 961. Therefore, in deciding the remand issue, the Fifth Circuit concluded that the "unique nature of the settlement agreement" in the federal court and the nature of the state courts plaintiffs' claims conferred federal jurisdiction. *Id.* at 961.

In contrast, the 02020 Lawsuit and Houston Lawsuit are not litigating the same issues. The 02020 Lawsuit primarily concerned disclaimers made by [Hill] III's father related to his inheritance rights. In contrast, the Houston Lawsuit deals with claims of malicious prosecution. Resolution of [Hill] III's claims in state court will not interfere with issues resolved in the 02020 Lawsuit. For example, the trusts created pursuant to the 02020 Lawsuit will not be impacted and, unlike in *Baccus*, [Hill] III does not seek declaratory or injunctive relief in the Houston Lawsuit that would impact the implementation of the Settlement Agreement or Final Judgment. Further, the only term of the Settlement Agreement or Final Judgment in the 02020 Lawsuit that Defendants claim is frustrated are releases which—far from constituting a "unique nature of the settlement agreement" as in *Baccus*—are common in almost every settlement agreement.

*Id.* at 7-9.

Plaintiff contends that Defendants' argument that the Houston Action is precluded by the GSA and Final Judgment in the 2020 Action is substantially similar, albeit more attenuated, to the argument expressly rejected by the Supreme Court in *Rivet*. Based on *Rivet*, Plaintiff, maintains that Defendants' removal argument, as it pertains to the GSA and Final Judgment in the 2020 Action, fails because the facts and justification for removal in this case are weaker than those in *Rivet*:

> the argument for preclusive effect was significantly stronger in *Rivet* compared to the instant case because the prior federal litigation in *Rivet* actually resolved the subject matter of the dispute (*i.e.,* the ownership of the real property). In contrast, in the instant case the 02020 Litigation did not involve the same controversy as the Houston Lawsuit.

Pl.'s Mot. 13. Plaintiff, therefore, argues that any defense based on claim preclusion or related doctrines does not provide a basis for removal and should be pursued in state court.

Plaintiff maintains that Defendants' reliance on *Energy Management Services, LLC v. City of Alexandria*, 739 F.3d 255 (5th Cir. 2014), is similarly misplaced, and does not support a finding of federal question jurisdiction in this case because the Fifth Circuit declined to express an opinion on whether *Baccus* was still good law, as that case's requirements were not met. In addition, Plaintiff asserts that the court in *Energy Management Services, LLC* reversed the denial of a motion to remand, reasoning that the district court erred in determining that a prior related case, in which it had retained jurisdiction over a fee dispute settlement agreement, provided a basis for supplemental jurisdiction over a subsequent state court action involving an alleged violation of the agreement: "That a related case was pending in federal court [i]s not in itself sufficient grounds for removal under 28 U.S.C. § 1441." Pl.'s Mot. 10 (citing *Energy Mgmt. Servs., LLC*, 739 F.3d at 260). Plaintiff further asserts that, "with respect to supplemental jurisdiction under 28 U.S.C. § 1367, the Fifth Circuit [also] explained that it did not matter whether the consulting firm's claims were

factually interdependent because supplemental jurisdiction requires for there to first be an independent basis for federal jurisdiction." Pl.'s Mot. 10 (citing *Energy Mgmt. Servs., LLC*, 739 F.3d at 259).

Plaintiff contends that Defendants' "extraordinary circumstances" removal argument, based on *Texas v. Real Properties in Interest*, 259 F.3d 387 (5th Cir. 2001), fares no better because the Fifth Circuit in that case "characterized the argument that removal still can be proper based solely on 'extraordinary circumstances,' as a 'remote proposition'" and determined that "extraordinary circumstances" did not exist, even though discovery was sought in a state action related to a federal settlement judgment worth billions of dollars that provided for payment of attorneys' fees and expressly enjoined all persons "who seek to raise any objections or challenges in any forum to any provision of this judgment . . . from proceeding in any other state or federal court." Pl.'s Mot. 11 (quoting *Real Parties In Interest*, 259 F.3d at 389).

Plaintiff contends that the Fifth Circuit in *MSOF Corporation v. Exxon Corp.*, 295 F.3d 485, 492-94 (5th Cir. 2002), similarly concluded that no "extraordinary circumstances" existed to support removal of state court claims, even when the "defendants might conceivably attempt to assert compliance with the consent decree as a defense to the plaintiffs' negligence claims." Pl.'s Mot. 11 (quoting *MSOF Corp.*, 295 F.3d at 492-94). Plaintiff, therefore, maintains that Defendants' potential defense, based on the release of claims provision in the GSA and Final Judgment in the 2020 Action, is not an extraordinary circumstance that gives rise to federal question jurisdiction in this case in the absence of diversity jurisdiction or an affirmatively alleged federal claim. Pl.'s Mot. 12 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). Plaintiff further asserts, based on *Smith v. Bayer Corporation*, 564 U.S. 299 (2011), that "efforts to obtain injunctions from federal courts

to enjoin existing state court proceedings on the basis of a prior federal judgment are generally prohibited unless the same exact issue had already been litigated in federal court," because "a court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.' Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the second court."  Pl.'s Mot. 12 (quoting *Smith*, 564 U.S. at 307).

Finally, Plaintiff contends that Defendants' reference to other actions brought by him is not relevant, as these other cases do not support a finding that the court has federal question jurisdiction over the removed action and claims.  Plaintiff asserts that the 494 Action, which was nonsuited and dismissed without prejudice, has no relevance whatsoever to the issue of whether the court has jurisdiction over the current action, and Defendants cite no authority to as to why the 494 Action is relevant to the court's jurisdictional analysis.  Regarding the 2020 Action, Plaintiff contends that, while Defendants argue that the Houston Action seeks to set aside the GSA and Final Judgment in the 2020 Action, the only provisions referenced by Defendants pertain to the "releases and covenants not to sue to which [Al III] agreed in 2010," but, for the reasons already explained, this alleged defense does not provide a basis for federal question jurisdiction and can be decided in state court. Pl.'s Mot. 13 (quoting Defs.' Notice of Removal 3).

Additionally, Plaintiff notes that, while a potential defense of release may be available to the Removing Defendants who were parties to the 2020 Action and GSA, the remaining Defendants who were not parties to the 2020 Action and GSA have no such potential defense.   As a result, Plaintiff maintains that the potential defense of release cannot support federal question jurisdiction as to these Defendants, even if, as Defendants contend, that such a defense is capable of supporting the court's exercise of federal question jurisdiction.  Regarding Defendants' contention that the Houston Action

is an attempt to undo or collaterally attack the GSA and Final Judgment in the 2020 Action, Plaintiff argues that the two suits involve entirely separate claims and issues—the Houston Action involves claims based on malicious prosecution in connection with alleged mortgage fraud, whereas the essence of the 2020 Action was a trust dispute between family members regarding the inheritance of part of the fortune of H.L. Hunt, the founder of Hunt Oil Company and Hill III's great grandfather, and the settlement of that dispute by agreement in the GSA that created and funded multiple trusts and also contained standard mutual releases of claims.

**B.      Defendants' Arguments in Support of Removal in Response to Motion to Remand**

Defendants continue to maintain that removal of this action falls squarely within the Fifth Circuit's opinion in *Baccas*, which, according to Defendants, is still good law. In this regard, Defendants contend that the court has removal jurisdiction over the tort claims asserted by Hill III in the Houston Action based on its original jurisdiction in the 2020 Action "because the Court exercising ancillary jurisdiction over his claims will assist it to manage its proceedings, vindicate its authority, and vindicate its order." Defs.' Resp. 18 (citing *Peacock v. Thomas*, 516 U.S. 349, 354 (1996); and *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994)). Defendants assert that, while the practice of courts exercising jurisdiction over a removed action under the All Writs Act to enforce a judgment has been curtailed, it has only been curtailed to the extent that a removing party lacks a source of original jurisdiction. In this regard, Defendants acknowledge that "the All Writs Act is not itself an independent basis for federal jurisdiction and a removing party must still trace its removal back to a source of original jurisdiction." Defs.' Resp. 19 (citing

*Syngenta*, 537 U.S. at 32-33; and *Peacock*, 516 U.S. 349 (1996), for the proposition that "ancillary jurisdiction must be traced back to original jurisdiction.").

To support their contention that the exercise of ancillary jurisdiction is appropriate in this case and authorized by the All Writs Acts to enforce the May 14, 2010 GSA and November 8, 2010 Final Judgment in the 2020 Action, Defendants rely on *Tittle v. Enron Corporation*, 110 No. MDL 1446, 2008 WL 4166172 (S.D. Tex. Aug. 29, 2008), and *Chance v. Sullivan*, 993 F. Supp. 565 (S.D. Tex. 1998). Based on these cases, Defendants contend that the combination of original jurisdiction that remains from the prior 2020 Action, ancillary jurisdiction, and the All Writs Act satisfies the need for original jurisdiction under 28 U.S.C. § 1441(a) in the removed action.  Defendants further assert that removal based on ancillary jurisdiction is appropriate here because Hill III is a vexatious litigant and brought the Houston Action and prior actions to undermine the GSA and Final Judgment in the 2020 Action over which the court retained jurisdiction. Defendants contend that, the Supreme Court in *Kokkonen* recognized the potential expansion of original jurisdiction when a district court expressly retains jurisdiction over an action, and although the Court concluded that the district court did not have jurisdiction to enforce the settlement previously reached in that case, it did so because, unlike this case, the district court did not retain jurisdiction over the settlement agreement.

Defendants disagree that removal of this action is barred by the Supreme Court's opinions in *Rivet* and *Syngenta* and contend that these cases are distinguishable.  Defendants assert that *Rivet* is distinguishable because the Supreme Court's conclusion in *Rivet* that jurisdiction was lacking was based on its determination that res judicata was a defensive plea that did not support removal of state law claims based on federal question jurisdiction.  Defendants contend that, unlike *Rivet*, federal

question jurisdiction in this case exists because Hill III's Houston Action is an attack on and attempt to undermine the GSA and Final Judgment in the 2020 Action.

Defendants maintain that *Syngenta* is distinguishable because, unlike this case, "Syngenta did not assert ancillary jurisdiction extension of the original jurisdiction flowing from the underlying federal suit, nor was it clear that it could do so given the differing controversies raised in the two suits." Defs.' Resp. 21 (footnote and citation omitted).  Defendants assert that the principal question in *Syngenta* was whether the All Writs Act could serve as an independent source of jurisdiction for removal purposes, and the Court held that it could not so serve.  Defendants further assert that, while the Court in *Syngenta* mentioned "that combining the All Writs Act with ancillary jurisdiction does not satisfy the requirement of identifying the underlying original jurisdiction needed for removal, as neither vehicle alone is an independent basis of jurisdiction," it did not expressly address or rule out whether ancillary jurisdiction in a removed state action in conjunction with original jurisdiction over a prior federal action is sufficient to satisfy the original jurisdiction requirement for removal under section 1441(a).  *Id.* (footnote and citation omitted).

Applying the reasoning in *Tittle*, Defendants contend that removal of the Houston Action was proper under section 1441(a) because:

> the 2020 Action conveys original jurisdiction to remove Hill III's claims because these two lawsuits share an undeniable identity and the impact the new claims may have on the GSA and FJ. As in *Tittle*, this Court retained (and has subsequently exercised) jurisdiction over Hill III and his vexatious litigation, which creates the ancillary jurisdiction required to tie Hill III's current claims back to the court's original jurisdiction in the 2020 Action and source the removal with the 2020 Action's federal question jurisdiction to satisfy 28 U.S.C. § 1441(a). . . . Hill III's current claims simply recycle the same allegations of conspiracy to indict him for mortgage fraud, which were based on pre-FJ actions that he already settled, then later alleged and lost in the 2020 Action, and which he asserted again in the 494 Action. Thus, the Court has the factual interdependence necessary to extend the 2020

Action's original jurisdiction through the expressly retained ancillary enforcement jurisdiction so as to support the removal of Hill III's state court action.

Defs.' Resp. 23.[4]

In addition, Defendants continue to maintain that this action involves extraordinary circumstances that support removal jurisdiction, given the court's prior orders in the 2020 Action, holding Hill III in contempt, condemning his refusal to abide by the GSA and Final Judgment, condemning his proclivity for filing frivolous motions, and deeming him a vexatious litigant. In this regard, Defendants contend that, "[u]nlike cases lacking 'extraordinary circumstances,' [they] do not rely on potential defenses to establish federal jurisdiction or extraordinary circumstances." Defs.' Resp. 26. Defendants assert that they, instead, contend that federal question jurisdiction exists because:

> Hill III's claims create extraordinary circumstances by attacking and undermining the federal settlement, GSA, and FJ. Hill III targets parties to the GSA he released in 2010, and his claims that Defendants conspired against him to gain an advantage in the 2020 Action attack the very foundation upon which the GSA and FJ rest. Because the thrust of Hill III's claims in this suit is that Defendants' pre-release conduct pressured him into settling and because the Defendants could only have "substantially benefitted from" the conspiracy by obtaining the GSA and FJ, Hill III's claims undermine the entire nearly decade-old federal settlement, GSA, and FJ, constituting extraordinary circumstances. Hill III is again directly attacking the FJ.

*Id.* (footnotes and citations omitted).

## C.     Standard for Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen*, 511 U.S. at 377 (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction

---

[4] Defendants' use of "FJ" refers to the "Final Judgment" in the 2020 Action.

conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court. Unless Congress provides otherwise, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, which is commonly referred to as federal question jurisdiction. 28 U.S.C. § 1331. This provision for federal question jurisdiction is generally invoked by a plaintiff

pleading a cause of action created by federal law.  This, however, is not the only manner in which federal question jurisdiction arises.

An action that asserts only state law claims may "arise under" federal law if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) (citations omitted).  This means that a federal district court has jurisdiction over a state claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  Otherwise stated, as "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive," a federal court is to decline jurisdiction if the exercise of its jurisdiction is inconsistent "with congressional judgment about the sound division of labor between state and federal courts governing application of [28 U.S.C.] § 1331." *Id.* at 313-14.  Under *Grable*, federal question jurisdiction exists only when "(1) resolving a federal issue is necessary to the resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Morris, LLP,* 538 F.3d 334, 338 (5th Cir. 2008).  In the final analysis, when a plaintiff's pleadings set forth only state law claims, a federal district court has federal question jurisdiction to entertain the action only if "(1) the state law claims necessarily raise a federal issue or (2) the state law claims are completely preempted by federal law." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

**Memorandum Opinion and Order – Page 15**

Whether an action "arises under" federal law and creates federal question jurisdiction over a case removed from state to federal court, or one originally filed in such court, ordinarily "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted). "[A] case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987). "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Thompson*, 478 U.S. at 808 (citation omitted). "Even an inevitable federal defense does not provide a basis for removal jurisdiction." *Bernhard*, 523 F.3d at 551 (citations omitted). In other words, the *complaint* must "raise[] issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993) (citation omitted).

## D.    Analysis

As the removing parties, Defendants have the burden of establishing that the court has subject matter jurisdiction to entertain this action. *See Kokkonen*, 511 U.S. at 377 (citations omitted). Defendants did not remove this action based on diversity jurisdiction, and, as noted by Plaintiff, they could not have done so because they are all citizens of Texas. While Defendants' Notice of Removal indicates that the case was removed under 28 U.S.C. § 1331, Plaintiff's Original Petition includes only state law tort claims, and Defendants do not assert that Plaintiff's state law claims arise under federal law.[5] Defendants' argument that removal in this case under 28 U.S.C.

---

[5] The Supreme Court's opinion in *Grable*, therefore, does not serve as a basis for the court to exercise jurisdiction based on a federal question.

§ 1441(a) is appropriate, instead, rests on their contention that a prior related action, over which the court has original jurisdiction, can satisfy the threshold original jurisdiction requirement under § 1441(a) for the newly removed action, even in the absence of diversity or federal question jurisdiction over the removed action, when combined with ancillary jurisdiction under 28 U.S.C. § 1367(a) and the court's inherent power under the All Writs Act to enforce judgments over which it retained jurisdiction.  This argument fails for a number of reasons.

The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Fifth Circuit has consistently ruled that "section 1651(a) is not an independent grant of jurisdiction." *Real Parties in Interest*, 259 F.3d at 392, citing *In re McBryde*, 17 F.3d 208, 220 (5th Cir.1997), and *Clinton v. Goldsmith*, 526 U.S. 529 (1999) (All Writs Act does not enlarge jurisdiction).

Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added). "[A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Peacock*, 516 U.S. at 356 (citation omitted). The Supreme Court has recognized that the exercise of ancillary jurisdiction by a federal court is appropriate: "(1) to permit disposition by a single court of claims

that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peak*, 516 U.S. at 354 (quoting *Kokkonen*, 511 U.S. at 379-80).

Defendants rely on the second type of ancillary jurisdiction recognized in *Kokkonen* to support their contention that the court has ancillary jurisdiction in the removed Houston Action to enforce the GSA and Final Judgment, which incorporated the GSA, in the prior 2020 Action. *Kokkonen* involved the enforcement of a prior settlement agreement. The procedural posture in this case and *Kokkonen*, however, is not the same. *Kokkonen* involved a previously-filed action in which the petitioner brought various state-law claims after the respondent terminated an agency agreement. *Kokkonen* 511 U.S. at 376. The action was removed to federal court based on diversity jurisdiction. *Id.* After a settlement was reached and executed, disagreement arose regarding one party's obligation under the settlement agreement to return certain files to the opposing party. *Id.* at 377. *Instead of filing a new action to enforce the settlement agreement, the respondent filed a motion in the same federal proceeding to enforce the settlement agreement*, which the petitioner opposed on the ground that the district court lacked subject matter jurisdiction to enforce the settlement agreement. The Supreme Court in *Kokkonen* agreed, reasoning that an action to enforce a settlement agreement in a prior federal suit required an independent basis of jurisdiction if the district court does not retain jurisdiction to enforce the agreement or judgment. *Id.* at 381. Absent the retention of jurisdiction over the settlement, the Supreme Court in *Kokkonen* concluded that "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382. While the GSA and Final Judgment in the 2020 Action include a retention of jurisdiction by United States District Judge Reed O'Connor, who previously presided

over this action before recusing himself in May 2013, *Kokkonen* is distinguishable because the respondent in that case moved *in the same proceeding* to enforce the settlement agreement, whereas this case involves a subsequent lawsuit that was removed to federal court for the alleged purpose of enforcing a settlement agreement and judgment.

In *Peacock*, the Supreme Court explained that when ancillary claims are asserted *in the same proceeding*, ancillary jurisdiction may extend to the claims that have a "factual and logical dependence on 'the primary lawsuit,'" as long as there is an independent basis for federal jurisdiction in the primary lawsuit. *Peak*, 516 U.S. at 355 (citation omitted). On the other hand, when ancillary claims are asserted in a subsequent action and have "no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." *Id.* (citing *Kokkonen*, 511 U.S. at 380-81). Thus, "claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction *over a subsequent lawsuit*." *Peak*, 516 U.S. at 355 (emphasis added).

From this, the court concludes that an independent basis for federal jurisdiction in the 2020 Action *might* support the exercise of ancillary jurisdiction over claims or a motion to enforce the GSA and Final Judgment in the 2020 Action, *if* the other requirements for ancillary jurisdiction are satisfied. *See id.* at 355-56; *see also Syngenta*, 537 U.S. at 34 & n.* ("Petitioners' assertion that removal was 'necessary' is unpersuasive on its own bottom. One in petitioners' position may apply to the court that approved a settlement for an injunction requiring dismissal of a rival action. Petitioners could also have sought a determination from the Louisiana state court that respondent's action was barred by the judgment of the Alabama District Court."). That, however, is not the

**Memorandum Opinion and Order – Page 19**

situation presented in this case. Because the state tort claims at issue in the Houston Action were asserted in a subsequent state action, which was removed to federal court, and there is no independent basis for jurisdiction in the removed action over those claims or Defendants' request to enforce the GSA and Final Judgment, the court determines that it lacks the threshold jurisdictional power over Plaintiff's claims, Defendants' request to enforce the GSA and Final Judgment, and the removed action, as the earlier 2020 Action does not provide federal jurisdiction over the subsequently filed Houston Action. *Peak*, 516 U.S. at 355-56; *Syngenta*, 537 U.S. at 33-34.

Moreover, the Supreme Court's decision in *Syngenta* makes unequivocally clear that "statutory procedures for removal are to be strictly construed." *Id*. at 32 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)). The general removal statute, 28 U.S.C. § 1441, states that, unless Congress expressly provides otherwise, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Court in *Syngenta* interpreted the plain terms of § 1441(a) to mean that removal of an action under this section requires a federal court to have an independent basis for original jurisdiction *over the removed action*. *Syngenta*, 537 U.S. at 33-34. Defendants' reliance on the All Writs Act and ancillary jurisdiction, or a combination of the two in conjunction with original jurisdiction over an earlier action, does not provide a basis for removal under § 1441(a), as *Syngenta*, based in part on its opinion in *Peacock*, made clear that "[s]ection 1441 requires that a federal court have *original jurisdiction over an action in order for it to be removed* from a state court," and "[t]he All Writs

**Memorandum Opinion and Order – Page 20**

Act, alone or in combination with the existence of ancillary jurisdiction in a federal court, is not a substitute for that requirement." *Syngenta*, 537 U.S. at 34 (emphasis added).

Like the Eleventh Circuit in *Syngenta*, the court interprets this to mean that "§ 1441 by its terms authorizes removal *only of actions over which the district courts have original jurisdiction*." *Id.* at 31. In other words, removal jurisdiction under § 1441 turns on whether the district court has original jurisdiction over the removed action itself, not, as Defendants argue, whether the district court has original jurisdiction over a prior federal lawsuit, which flies in the face of the plain meaning of the statute. Accordingly, in the light of the Supreme Court's opinions in *Peacock* and *Syngenta*, the disagrees that removal based on the All Writs Act, ancillary jurisdiction, and the court's original jurisdiction over the 2020 Action provides an independent basis for the exercise of original jurisdiction over the removed action or that the original jurisdiction required by statute for the removed action can be supplied via an "ancillary jurisdiction extension of the original jurisdiction flowing from" a prior lawsuit. Defs.' Resp. 21.

Defendants also attempt to distinguish *Syngenta* on the ground that "Syngenta did not assert ancillary jurisdiction . . . nor was it clear that it could do so given the differing controversies raised in the two suits." Defs.' Resp. 21 (footnote and citation omitted). Contrary to Defendants' assertion, the petitioner in *Syngenta* argued that removal was proper based on "the All Writs Act in conjunction with the doctrine of ancillary enforcement jurisdiction." *Syngenta*, 537 U.S. at 31. Additionally, the procedural histories of this case and *Syngenta*, and the path they followed to get to federal court, are strikingly similar.

Similar to this case in which the parties to the GSA in a prior federal action agreed to dismiss and release certain claims, *Syngenta* involved a related federal action in which a settlement

was executed, and the parties agreed in the federal action to dismiss certain claims. *Id.* at 30. In this case and *Syngenta*, the removing parties contend that retention of jurisdiction by the district court over the settlements distinguished the cases from *Kokkonen*. *Id.* at 33.

Like this case, the respondent in *Syngenta* removed to federal court, based on the All Writs Act under § 1651 and ancillary jurisdiction under § 1367(a), a state court action brought by the petitioner because the respondent believed that the petitioner's state claims in the state court proceeding violated the settlement agreement that required dismissal and release of the claims asserted in the state case. *Id.* at 30. Like this case, after removal, the action was transferred, pursuant to 28 U.S.C. § 1404(a), to the federal district court where the settlement agreement was entered. *Id.* Based on its inherent powers under the All Writs Act, the transferee district court in *Syngenta* dismissed the removed action as barred by the settlement in the prior action and sanctioned the petitioner's counsel for misrepresentations to the state court regarding the terms of the settlement agreement and whether the claims asserted in the state action were barred by the settlement. *Id.* In *Syngenta*, the Eleventh Circuit concluded that the All Writs Act could not support removal of the state action to federal court under § 1441. *Id.* at 31. The Supreme Court agreed and affirmed. *Id.* at 34.

As did the Eleventh Circuit in *Syngenta*, this court cannot ignore binding Supreme Court precedent and exercise removal jurisdiction over the removed Houston Action under § 1441 when none exists. That the two Southern District of Texas cases cited by Defendants—*Tittle v. Enron Corporation*, 110 No. MDL 1446, 2008 WL 4166172 (S.D. Tex. Aug. 29, 2008); and *Chance v.*

*Sullivan*, 993 F. Supp. 565 (S.D. Tex. 1998)—reached a contrary conclusion is of no moment, as they are not binding on this court.[6]  Moreover, the court believes that the holdings of these cases are inconsistent with Fifth Circuit and Supreme Court precedent.

For the same reason, Defendants' contention regarding the existence of "extraordinary circumstances" arising from Plaintiff's conduct or allegations in other actions such as the 2020 Action and 494 Action, which was dismissed without prejudice, is unavailing, as the court does not have original jurisdiction over the removed Houston Action. Absent original jurisdiction over the removed action based on diversity or a federal question, Defendants are left only with their contention that Plaintiff released all claims against the Removing Defendants who were parties to the 2020 Action and GSA, including those he now asserts in the Houston Action.  As correctly noted by Plaintiff, however, the defense of release is not an adequate basis to confer federal jurisdiction in this removed action.  *Thompson*, 478 U.S. at 808. Moreover, only half of the Defendants in the Houston action were parties to the 2020 Action and GSA.

Accordingly, for all of these reasons, including those set forth in Plaintiff's Motion to Remand, the court determines that Defendants have not met their burden as the removing parties of establishing subject matter jurisdiction based on a federal question.  The court, therefore, has no authority over this removed action and must remand it to the state court from which it was removed.

---

[6] The court notes that another Southern District of Texas case involving a similar issue reached the opposite result based on *Syngenta*. *See Goins v. Hitchcock Indep. Sch. Dist.*, 424 F. Supp. 2d 902, 909 (S.D. Tex. 2003). The result reached in *Goins* is consistent with that reached by the undersigned in this action.

### III.    Plaintiff's Request for Attorney's Fees and Costs

Plaintiff requests an award of attorney fees and costs incurred with respect to his motion to remand. When removal is determined to be improper, courts have discretion in awarding attorney's fees to reimburse a plaintiff for costs associated in obtaining a remand. 28 U.S.C. § 1447(c). Absent unusual circumstances, however, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). Given the somewhat unique and contentious nature of the history between the parties and the Final Judgment entered in Civil Action No. 3:07-CV-2020-L, the court **concludes** that an objectively reasonable basis existed for the removal.  Although the court disagrees with the holdings in the two Southern District of Texas cases cited by Defendants, these cases do support their position regarding jurisdiction. In other words, reasonable minds could differ whether this case was removable. The court, therefore, determines  that the imposition of costs and fees is not warranted and will deny Plaintiff's request in this regard.

### IV.    Conclusion

For the reasons explained, the court lacks subject matter jurisdiction over this removed action under 18 U.S.C. § 1441(a).  Further, with respect to 28 U.S.C. 1332(a), to the extent any basis for removal exists, removal of this action is procedurally barred because of the statutory prohibition against removal by in-state defendants as set forth in 18 U.S.C. § 1441(b)(2). Accordingly, the court **grants** Plaintiff's Motion to Remand to State Court (Doc. 4); **denies** Plaintiff's request to recover attorney's fees and costs (Doc. 4); and **remands** this action to the 127th Judicial District Court, Harris County, Texas, from which it was removed. The clerk of the court **shall** effect the remand in accordance with the usual procedure.

**It is so ordered** this 4th day of September, 2019.


Sam A. Lindsay
United States District Judge